UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH ISMAEL MAYANCELA
SAULA,

        Petitioner,

    v.

TAMMY MARICH, *in her official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement*; JOSEPH FREDEN, *in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention* Facility; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as U.S. Security of Homeland Security*; TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*,

        Respondents.[1]

_____



26-CV-453 (JLS)

## <u>DECISION AND ORDER</u>

This Court has examined the Second Circuit's recent decision in *da Cunha v. Freden*, --- F. 4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).  To the extent the holding therein conflicts with this Court's decisions in *Rivera Castillo v. Rhoney*, No.

_____

[1] The caption has been updated pursuant to Federal Rule of Civil Procedure 25(d).

25-CV-1065 (JLS), 2026 WL 775995 (W.D.N.Y. Mar. 19, 2026), and *Ferreira Candido v. Bondi*, No. 25-CV-867 (JLS), 2025 WL 3123696 (W.D.N.Y. Nov. 7, 2025), this Court is bound to follow the Second Circuit's *da Cunha* dictates.  The balance of this Court's analysis in *Rivera Castillo* and *Ferreira Candido* bears reference and is incorporated here.

As relevant to the case now before this Court, in *da Cunha*, the Second Circuit ruled that:

1. "A noncitizen like [da Cunha] is unlawfully present, and thus an 'applicant for admission,' but indisputably *never sought* or applied for lawful entry after inspection and authorization, and is not doing so now.  To the contrary, he evaded immigration inspectors, snuck into the country, and today applies only for non-admission forms of relief, including asylum and cancellation of removal." *da Cunha*, 2026 WL 1146044, at *7 (citation modified).

2. "Here, although [da Cunha] is an applicant for admission under the statutory definition because he is present in the country and has never been admitted, it simply cannot be said that he is 'seeking admission,' as he is not requesting lawful entry into the United States.  By total contrast, [da Cunha] entered the interior unlawfully twenty years ago and is now seeking only relief from removal.  Therefore, because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to [da Cunha]." *Id.* at *6.

3. "Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, *and who were not apprehended while entering the country or shortly thereafter.*" *Id.* at *2 (citation modified).

4. "Together, Section 1225(b)(2) therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Id.* at *6.

5. "Instead, Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, *or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'*" *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (holding that a noncitizen "apprehended just 25 yards from the border" had not effected an "entry"), and citing *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958) (treating noncitizens paroled into the country "as [if] stopped at the boundary line")) (citation modified).

. . .

In *da Cunha*, the Second Circuit drew a distinction between aliens who "snuck into" the country and "evaded" detection for years (ruling that a bond hearing is

3

required) and aliens who were encountered at or near the border (where no bond hearing is required).

Here, Petitioner is in the latter category. *See* Dkt. 1 at 11 ¶ 37. (Petitioner "entered the United States on December 22, 2022, when [he] presented himself *at the United States-Mexico border* on foot . . ."). In particular, he admitted that he is not a citizen or national of the United States and is a native and citizen of the Dominican Republic. *See* Dkt. 13 at 4.

As such, under *da Cunha*, "Section 1225(b)(2)(A) applies to those noncitizens [like Petitioner here] who present themselves at a port of entry for admission, *or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'*" *da Cunha*, 2026 WL 1146044, at *6 (citation modified).

Petitioner indeed was "seeking admission" into the United States when he entered and was first encountered by government agents. He was at or near the border intending to enter and remain here. He has voluntarily remained since (until the commencement of his current detention), thereby continuing to "seek" admission to the United States. How could it be otherwise? If he were not so seeking admission, he would have given up and departed already and, certainly, would have so departed after his release.

In addition, the "entry fiction" doctrine, which treats petitioners the same way now, under the Constitution, as when they were first encountered, is in accord. *See da Cunha*, 2026 WL 1146044 at *15 (citing *Thuraissigiam*); *see also Thuraissigiam*, 591

4

U.S. at 139–40; *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (same, as to a petitioner stopped at the border and paroled into the country).

For the reasons stated above, Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) and, therefore, is not entitled to a bond hearing.  Thus, Respondents' motion to dismiss is granted, and the petition is denied.

The Clerk of Court shall close this case.


SO ORDERED.

Dated:      May 20, 2026
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE